UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:20-CR-00011-GNS

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.

ROBERT E. WINDHAM, II                                                       DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Objection (DN 59) to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 58) regarding Defendant's Motion to Suppress (DN 30). The matter is ripe for adjudication. For the reasons stated below, the objection is **OVERRULED**.

### I.     BACKGROUND

On March 20, 2020, deputies with the Warren County Sheriff's Department responded to 911 call reporting that a gunshot was heard in an adjoining unit of a duplex. (Suppression Hr'g Tr. 5:13-22, Nov. 9, 2021, DN 52). The caller also reported hearing an argument prior to the shot and a woman crying before the ruckus abated. (Suppression Hr'g Tr. 5:23-6:7).

Upon arrival, a deputy knocked on the door of the unit where the shooting reportedly occurred and announced the presence of sheriff's deputies. (Suppression Hr'g Tr. 6:25-7:7). A man, later identified as Defendant Robert E. Windham, II ("Windham"), opened the door, exited the residence, and closed the door behind him. (Suppression Hr'g Tr. 7:8-9). A woman named Bobbie Drury ("Drury") also later exited the residence and closed the door. (Suppression Hr'g Tr. 9:24-10:5).

1

According to the deputies, both Windham and Drury denied that a shooting had occurred and appeared evasive. (Suppression Hr'g Tr. 7:15-23, 8:24-9:2, 10:7-8, 12:9-10). At one point, Drury stated that a shot may have been fired in the backyard of the duplex. (Suppression Hr'g Tr. 12:12-14). Based on their observations, the deputies believed this was a domestic dispute. (Suppression Hr'g Tr. 11:1-7, 44:19-45:6, 56:25-57:3). The deputies also contacted the reporting parties in the adjoining unit of the duplex, who stated that they had heard a loud argument through the common wall, a gunshot, and then a woman crying. (Suppression Hr'g Tr. 41:5-22). As a result of the information gathered from the residents of the subject apartment and the reporting parties, the deputies decided to enter the unit to look for any potential victims or a gunman. (Suppression Hr'g Tr. 18:5-24, 45:12-14).

Upon entry, the deputies observed a Mason jar of what appeared to be marijuana on the living room floor; gun oil and Winchester .380 ammunition were also in plain view on a shelf in the bedroom. (Suppression Hr'g Tr. 27:25-28:24, 46:20-47:1). Drywall debris was found on the kitchen floor and a bullet hole was visible in the kitchen ceiling. (Suppression Hr'g Tr. 28:25-29:5, 47:1-4).

Windham and Drury were detained while the deputies sought a search warrant. (Suppression Hr'g Tr. 31:25-32:15). At some point, Drury consented to a search of the unit and disclosed that a gun would be found on Windham's side of the bed in the bedroom. (Suppression Hr'g Tr. 32:19-23). Nevertheless, the deputies waited until they had obtained the search warrant before reentering the unit and discovering the firearm in the location identified by Drury. (Suppression Hr'g Tr. 32:23-33:3). Other items in the bedroom corroborated Drury's statement as to which side of the bed was Windham's. (Suppression Hr'g Tr. 33:4-11).

A federal grand jury subsequently indicted Windham for possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Indictment 1-2, DN 16). Windham then moved to suppress the firearm as being obtained as a result of an illegal warrantless search. (Def.'s Mot. Suppress 1-3, DN 30). Following a suppression hearing and post-hearing briefing, the Magistrate Judge entered a Report & Recommendation ("R. & R.") recommending denial of the motion. (R. & R. 12, DN 58). The Magistrate Judge concluded that the protective sweep by the officer was sufficiently brief, limited in scope, and warranted under the circumstances based on the exigent circumstances exception, but rejected the United States' assertion that it qualified as a protective sweep. (R. & R. 7-12). Windham objects to the recommendation. (Def.'s Obj. R. & R. 1, DN 59).

## II. STANDARD OF REVIEW

When ruling on an objection to a magistrate judge's report and recommendation of disposition on a Defendant's motion to suppress evidence, the Court conducts a *de novo* review. *See* 28 U.S.C. §§ 636(b)(1)(A), (B); *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2004).

## III. DISCUSSION

Windham contends that the warrant obtained by the deputies resulted from the initial unconstitutional search.[1] (Def.'s Obj. R. & R. 1-2). Thus, he asserts the Magistrate Judge erred in recommending the denial of the motion to suppress. (Def.'s Obj. R. & R. 2).

---

[1] In his Objection, Windham also incorporates by reference the arguments he made in the post-hearing memorandum, which is improper. *See United States v. Chaplin*, No. 1:16-CR-00001-GNS, 2017 WL 1365226, at *3 n.1 (W.D. Ky. Apr. 7, 2017) ("Defendant 'incorporates by reference, all assertions, arguments and authority fully detailed in the Defendant's Motion to Suppress and Brief in Support of Motion to [S]uppress in addition to the arguments above.' That statement, however, does not constitute a 'specific written objection to the proposed findings and recommendations' as required by Fed. R. Civ. P. 72(b)(2)." (quoting *Edwards v. Niagara Credit Sols., Inc.*, 586 F. Supp. 2d 1346, 1348 (N.D. Ga. 2008))).

The Fourth Amendment of the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness . . . ." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted) (citations omitted). "[R]easonableness generally requires the obtaining of a judicial warrant." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) (citation omitted). "The need for a warrant triggers the Fourth Amendment's 'Warrant Clause,' which also requires 'probable cause.'" *United States v. Baker*, 976 F.3d 636, 642 (6th Cir. 2020) (citation omitted). "The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search." *Steagald v. United States*, 451 U.S. 204, 211 (1981). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specially established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

The Magistrate Judge rejected the United States' first contention that the search was a protective sweep not requiring a warrant but concluded that the search was proper under the exigent circumstances exception. (R. & R. 7-12). As the Supreme Court has explained:

> One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. "'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.

*Brigham City v. Stuart*, 547 U.S. 398, 403-04 (2006) (internal citations omitted) (citation omitted). "This 'emergency aid exception' does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. It requires only 'an objectively reasonable basis for believing' that 'a person within [the house] is in need of immediate aid.'" *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (internal citation omitted) (citing *Brigham City*, 547 U.S. at 404-06; *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)); *see also United States v. Holloway*, 290 F.3d 1331, 1338 (11th Cir. 2002) ("[I]n an emergency, the probable cause element may be satisfied where officers reasonably believe a person is in danger."). "In reviewing whether exigent circumstances were present, the Court considers the 'totality of the circumstances and the inherent necessities of the situation at the time.' 'Indications of the need of aid include reported observations of distress, and credible, reliable evidence that someone inside the home is in trouble.'" *United States v. Martin*, No. 5:17-134-DCR, 2018 WL 1020119, at *3 (E.D. Ky. Feb. 22, 2018) (internal citations omitted) (citation omitted). In arguing that this exception applied, the United States contends that the officers conducted the search because of the deputies' reasonable belief that there may have been a victim or victims within the residence. (Pl.'s Br. 3-5, DN 56).

In Windham's Objection, he asserts that the Magistrate Judge erred in concluding that the exigent circumstances exception applied because: (i) the deputies did not identify any statements made by Windham or Drury that were false; (ii) too much time had transpired between the deputies' arrival on scene and the search of the unit, which made this exception in applicable; and (iii) the lack of any indication or evidence obtained by the deputies supporting the belief that there was an injured or deceased occupant inside the residence to justify a search under this exception. (Def.'s Obj. R. & R. 3-6).

The veracity of Windham and Drury's statements to law enforcement was clearly in question prior to the search. While the 911 caller had reported gunfire from the unit, both Windham and Drury denied that a gun was fired inside, and Drury later suggested that the gunfire may have been outside. (Suppression Hr'g Tr. 8:22-23, 14:5-8, 16:3-7, 22:12-22, 23:13-25, 34:25-35:9). While both said no one else was in the duplex unit, the deputies testified that Windham and Drury's behavior and answers to questions did not dispel the 911 caller's report and the deputies' concern that someone may have been shot within the unit. (Suppression Hr'g Tr. 13:17-25, 19:3-5, 36:10-20, 45:15-46:1, 58:10-20, 59:6-13). Windham did not look directly look at the deputies, was evasive in his answers to questions, and smelled of alcohol. (Suppression Hr'g Tr. 7:17-22, 8:19-9:2, 16:2-3, 22:4-11). Drury's eyes were observed as red. (Suppression Hr'g Tr. 10:5, 24:2-4). While Windham and Drury denied that any altercation or disturbance had occurred, one of the reporting parties was empathic that he had heard a gunshot from the adjoining unit. (Suppression Hr'g Tr. 18-21, 42:5-8, 45:19-21, 49:6-9). Thus, the deputies had information from which they could reasonably conclude that Windham and Drury were not being truthful about what had transpired.

Likewise, the passage of time and the nature of the perceived emergency did not preclude the application of the exigent circumstances exception. The Magistrate Judge relied on *Causey v. City of Bay City*, 442 F.3d 524 (6th Cir. 2006), where the officers arrived at a residence to investigate a report of multiple gunshots being fired from the backyard. *See id.* at 526. The officers contacted the 911 caller to obtain more information before entering the backyard. *See id.* at 527. After the officers observed indentations and spent shell cases, the officers knocked on the door and unanswered calls were made to that address. *See id.* After waiting for backup, the officers eventually entered the residence.

In addressing whether exigent circumstances existed for the search of the residence, the Sixth Circuit noted:

> The fact that the officers briefly investigated the situation and waited for backup does not preclude an exigency. Because we held that there was an exigent circumstance in [*Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996)], even though the officers in that case confirmed a shots-fired call with a neighbor before entering the residence, the mere fact that the officers sought to confirm that shots were fired does not demonstrate by itself that no exigency existed. Moreover, waiting a half hour or less for backup also does not mean that there was no exigency. The officer who arrived on the scene in *Dickerson* waited for backup, but this court held that an exigency existed. As *Dickerson* demonstrates and the Seventh Circuit has held, officers may take "reasonable precautions to reduce the risk of serious injury to themselves or others . . . ." The officers in this case acted reasonably in the face of a potentially emergency situation.

*Id.* at 530-31 (internal citations omitted); *see also United States v. Najar*, 451 F.3d 710, 719 (10th Cir. 2006) (holding that a 30-minute delay to investigate prior to the search did not preclude the application of the exigent circumstances exception).

The time delay here—approximately 20 to 25 minutes between arriving on scene and searching the unit—did not invalidate the search or undermine the nature of the perceived emergency. While Windham relies on *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994), in arguing that there was a lack of an immediate threat to justify the search, the delay between the threat—the defendant coming to the door with a gun—and the search was four hours, which the Sixth Circuit held did not qualify as an immediate threat. *See id.* at 997-98. Courts have held that the exigent circumstances exception still applies even if there is a reasonable delay caused by the officers investigating or for other reasons. *See, e.g.*, *Najar*, 451 F.3d at 719 ("A delay caused by a reasonable investigation into the situation facing the officers does not obviate the existence of an emergency."); *Causey*, 442 F.3d at 531 ("[W]aiting a half hour or less for backup also does not mean that there was no exigency."). As noted above, the demeanor and evasive answers of Windham and Drury and the information from the reporting

parties provided a reasonable basis for the deputies to believe that someone may have been shot within the unit.

For these reasons, the Magistrate Judge did not err in recommending that denial of the motion because the warrantless search was justified by exigent circumstances. Defendant's Objection is overruled, and Defendant's Motion to Suppress is denied.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Objection (DN 59) is **OVERRULED**, the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 58) is **ACCEPTED AND ADOPTED IN ITS ENTIRETY**, and Defendant's Motion to Suppress (DN 30) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

February 11, 2022

cc: counsel of record